Case number 20-1535. United States of America v. Christopher Houghton. Arguments not to exceed 15 minutes per side. Ms. Carowyn, you may proceed for the appellant. Thank you. Good morning, your honors. May it please the court, my name is Stephanie Carowyn on behalf of the United States. I would like to reserve this morning four minutes of time for rebuttal. The warrant to search defendant Houghton's residence was supported by probable cause. The reviewing magistrate had a substantial basis to issue the warrant and the officers were objectively reasonable in relying on it. However, in this case, the district court, after reciting the correct legal standards, nevertheless failed to give the magistrates finding great deference and instead engaged in a line-by-line essentially de novo review of the affidavit in contravention of this particular precedent. As such, the district court's analysis here was procedurally flawed, which is why the United States is asking this court to reverse the district court's decision. Counsel, didn't trial counsel ask the court to do that? Ask the court to do what, I'm sorry, your honor? To go through it line by line. I think ultimately going through it line by line wasn't the problem. It was the isolation with which the district court went through the affidavit line by line. So this court's precedent is very clear that you look holistically at the affidavit. You take a totality of the circumstances approach and look at what the affidavit does contain as opposed to what the affidavit does not contain when you look at the opinion from this court in Christian. And that's not what the court did here. The court essentially looked at each separate paragraph as if it existed in isolation. And by doing that, really didn't understand and really didn't take into consideration the fact that the magistrate judge clearly looked at the entire affidavit holistically and found that there was probable cause based on how those paragraphs work together to form the whole of the affidavit in this particular case. Okay, what do you do with the question of this person's credibility? And I don't mean, I mean that in a legal sense, the reliability of the informant. Absolutely. I think as your honors are well aware, there's three different things that the court say should be looked at when looking at a warrant based on informant's information. And those three things are veracity, reliability, as your honor pointed out, and basis of knowledge. Here, we can see there wasn't evidence in a particular affidavit that AMJ, the named informant who was named to the magistrate judge, had worked with the police before. And that's, I think, really where the district court focused its analysis was on that reliability. There was nothing about this particular person had worked with the police five times before and made X number of cases. But there are two other planks that were explored extensively. And I think when you look specifically at the basis of AMJ's knowledge and the veracity here, which comes through the corroboration that the officers did of the tip that was given to them by AMJ, when you look at those two things, the affidavit is sufficient. And I think that's particularly true where in a case like this, the informant is named to the magistrate judge who is given great deference in reviewing the warrant, actually had AMJ's full name and date of birth. This particular case is very, very similar to this court's decision in Pelham, which I think is a very instructive case for this court to look at. In Pelham, as it was here, there was a traffic stop. The informant told the officers during the pendency of that traffic stop, I've been in the defendant, Mr. Pelham's home within the last 24 hours. And I've seen evidence of criminal activity. In that case, the growing and the preparing of marijuana for disrepute. So the theory is that if you're named to the magistrate, you're less likely to lie? I think that that's more than a theory. I think that's backed up by the case law in this particular situation. And I think if you look at the May case, which was cited in our reply brief, the May case actually indicates that the statements of an identity was known to the police, and he would be subject to prosecution for making a false report are entitled to far greater weight than those of an anonymous source. And that's also, of course, what this court held in Pelham. In Pelham, the affidavit itself was pretty sparse. It was, you know, the background of the officer and then essentially the traffic stop with the named informant and the information that the informant relayed to police that was relayed to the judge and to the reviewing magistrate. And here we have very much the same situation. AMJ was stopped by the police. So he was obviously looking at his own potential criminal liability. But he was able to relay to the police at that time that he had been inside Mr. Houghton's residence within the past 24 hours, and in fact, had previously lived at Mr. Houghton's residence, so was able to compare what he'd seen in the prior 24 hours with what he knew from his prior residence there. And he was able to compare the tools that he saw at Mr. Houghton's residence on the 24th of December, so the day before the traffic stop, to what he had seen 28 days earlier before he had gone to jail. But how does that establish any criminality whatsoever? So you have more tools? I mean, marijuana is illegal. Tools are not. Sure. And certainly the district court focused on that. And that's understandable in some respects. If you look at the officers, it would have been so easy for the officers to check at those two houses to find out if things had been stolen. And then you have verification and you have a crime. Certainly that's understandable that they could have taken that particular step. And I actually acknowledged that several times to the district court below when we were arguing about the validity of the particular warrant. But again, you have to look at the corroboration that the officers did do and whether that's sufficient, in fact, to help establish the veracity of the particular informant. And here you do have steps towards corroboration. You have the fact that AMJ told the police, Mr. Houghton actually confessed to me that I was casing a particular shed to steal from it in the future. And when the officers were able to verify what address that to actually talk to the homeowner and the homeowner verified, yeah, my shed was propped open and the lock was missing, which is exactly what AMJ had relayed to the police and was relayed to the reviewing magistrate in the particular affidavit. So you have to look at the corroboration that was done and you have to look holistically at the affidavit in its totality because it's in looking at this paragraph or this statement doesn't necessarily establish illegal conduct. It doesn't put everything into context. That's essentially, I think, recited in a brief paragraph about the stolen truck and the snap-on tools. There was an allegation statement made by AMJ that Mr. Houghton had actually admitted I stole a work truck that had some snap-on tools in it. And then subsequently, AMJ saw Mr. Houghton actually unloading that very type of tool from his own truck, thus corroborating the prior statement that Mr. Houghton had made. And also, I think the officers went out of their way to also establish that there was a relationship between Mr. Houghton and JF, who was one of the co-conspirators that AMJ was able to relay to law enforcement. So there was corroboration. And again, as this court has held in Williams, for example, named informants require less corroboration than anonymous tipsters. And we have a named informant who opened himself up to a charge for a false police report if the information he had provided to the police that was ultimately provided to the magistrate was, in fact, a problem. And ultimately, what we have here is a named informant who provided information, the officers corroborated that information, and then did exactly what we want police officers to They went out and got a warrant. They didn't try to come up with an exception to the warrant requirement or somehow otherwise search Mr. Houghton's residence. They did the follow-up work that we asked them to do, and they got a warrant. And the standard is just a fair probability that evidence of illegal activity is going to be found in a particular place. And in this particular instance, there was a fair probability based on the information in the totality of the affidavit that was submitted to the magistrate judge. But even at the very least, there was certainly a basis for applying the liaison good faith exception here, which the magistrate judge declined to do. This is not a case where it's a bare bones affidavit. In fact, the district court judge said as much on the record, saying that she did not think that this could be considered a bare bones affidavit. As this court held in white, bare bones is a conclusory affidavit that asserts only the affidavit's belief that probable cause existed. Here we have 17 paragraphs, including specific facts from a named informant, that probable cause existed. This isn't a bare bones affidavit. This is an affidavit with facts. But in deciding that Leon didn't apply, the district court in this particular instance essentially conflated probable cause and good faith. And if you look at page ID 183, the district court in its holding actually stated, we have an affidavit that clearly lacks probable cause. And for the same reasons, I think that ultimately goes on to hold that the Leon good faith exception doesn't apply. And it can't be for the same reasons. There has to be, as this court has said previously, light between lack of probable cause and good faith. They're not one in the same. But in this particular instance, they were conflated by the district court. Well, wasn't the court saying that no cause? For the same reasons that she held that there wasn't probable cause in the affidavit. There's sort of a conclusory statement about for the same reasons, there's no, that there's no probable cause. Leon good faith should also not apply. And in this particular case, there's much more than just a bare bones affidavit here. There's multiple paragraphs of facts. There's firsthand confessions from Mr. Houghton to AMJ. And there's corroboration that the officers were able to do of those specific facts and details before they actually went and got the warrant. So given that the warrant was validly issued, this court and the district court both owe great deference to the magistrate. And I would urge the court to remand the case and find that there was both probable cause and that Leon would apply. Thank you. Counsel. Yes. Morning. My name is Paul Nelson. I'm here on behalf of Christopher Houghton. Judge Neff correctly concluded that the affidavit did not establish probable cause, and it was so lacking in probable cause that no reasonable law enforcement officer would have relied on that in good faith. I think the fact the government seems to rely pretty heavily on the fact that AMJ's name was given to the magistrate who issued the warrant. But as this course indicated, one of the cases back that cited in our brief in U.S. versus Higgins back in 2009, 557 F3rd and 390, that a person who's arrested in the course of committing criminal activity certainly has an incentive to cooperate. Here we've got AMJ who just based on the limited information that was contained in the affidavit. It's a factor, isn't it? The fact that he was saying. It's a fact. I mean, it is a fact. It may not tell the whole story, but I mean, combined with there's corroboration. It's not perfect corroboration. There's some pretty detailed information about what's going on. There was, I mean, I don't know. I don't see, I mean, at a minimum, I don't see how this is a bare bones affidavit. I guess I'm just, maybe probable cause is close or maybe there's not. I don't know. But it just seems like it looking at it in its entirety. And I think, and I do agree with Judge White, your comment, the government did at the hearing in the district court did go through on a case or excuse me, paragraph by paragraph basis to make the argument here. And looking at this, that the basic, as the court said back to the unbound court in Allen back in 2000, that when you're looking at veracity, reliability, and basis of knowledge that without an indicia of reliability, that substantial police corroboration is necessary. And here, and again, his name being given as some is a factor that can be considered. But on the other hand, I think just based on the facts in the affidavit that we have someone who was in jail, doesn't say why, but for 28 days and almost immediately engaged in additional criminal conduct was stopped by the police, that I think it's a, there's a fair inference there that he's not going to be too terribly concerned about the consequences of his actions. So from the fact, I don't think it's something that would count that well, just because he's cooperating is because he's afraid he's going to get in more trouble. I mean, he's been in trouble. He's continuing to be in trouble. But going back to the good faith exception, what would be the closest case that you have to show us why this affidavit is a bare bones affidavit? So do you have a case that that says that found something was about a bare bones affidavit that looks like this case? There are a couple of cases I have. One of them was Weaver. It was 99 F 1372 back in 1996, where the affidavit was weak. And the court said at page 1380, that with little firsthand information and no personal observation, McCullough, the officer should have realized that he needed to do more independent investigative work to show a fair probability that this suspect was either possessing, distributing or growing marijuana. I think that was one. And I think even in the when you look at some of the cases where the court has said that perhaps there was not enough for probable cause, but it was sufficient to establish Leon, when you just compare the affidavits that were held in those cases not to have probable cause, for example, in the Christian case. And I think I would have had a difficult time arguing that case because it was a pretty detailed affidavit that cited on page 308 is 925 F, third at page 308, where it goes through the facts of the what was in the affidavit. And the Gilbert case is another one where the court made a reference to why it's not just a bare bones affidavit. And when you compare those affidavits in those cases to what we have here. But I think that even corroboration here is at best very weak. And I think with regard to paragraph seven, for example, that this and I'm sure it was just counsel just misspoke when indicating that the homeowner when was interviewed, said that the door had been propped open. But that's not what the affidavit says the homeowner said that the homeowner said he found the door slightly open with a lock missing. And that's inconsistent with what AMJ said that Houghton told him. And I think when you compare the other affidavit to the things in there, the detail that AMJ cited on a lot of these other allegations, that I think that's a significant distinction between what Houghton supposedly said, and what the situation was at that home. So I think that's Mr. Nelson, can you maybe I'm missing something, maybe you can fill me fill. What's the discrepancy between what Houghton said? And what the I'm sorry, what AMJ said? And what the homeowner said? Well, Houghton AMJ said Houghton told him that he had the door open, props, the door open, and the homeowner said it was open. It was slightly, slightly open. How can a door be slightly open? If it isn't somehow propped or jammed? Well, I think any number any door on a hinge, right? Any door that you open, if you open it slightly, it's, I mean, unless, in most cases, it's going to remain open. I mean, the door to my office, I'm sure the door to the court offices. Why does that that seems like an odd? I mean, it's kind of a weird, I mean, it's the same, it just happens to be the same address and happens to be a shed on the property. And he identified it. And then you're saying, well, it's not reliable, because he said the door was, was propped open. And the homeowner said it was slightly open. I mean, that seems like everything else would be like, would I mean, why would it be that way? Otherwise, you're saying they just picked a random address, and there was a shed that happened to be open, or that AMJ himself did it, and then was lying about whether Houghton told him? I mean, is that that very well? That very well could have been but also the fact that the homeowner said that the lock was missing. And there was no statement attributed to Houghton that he had removed the lock in any way. And so but also that just looking at these other, there were two other addresses, where AMJ claimed Houghton told him he had stolen things that there were, those were not corroborated in any way. That the information that in paragraph six, for example, all of these things that AMJ said were new, when he came got out of jail after 28 days, that were new things that he hadn't seen before. There's nothing that indicates that any of that was reported stolen. The idea with the stealing a work truck, one would think if a work truck had been stolen, that that would have been something that would have been reported, and there would have been some information on that. But again, there's nothing, there is nothing to show that that any investigation was done to confirm that there in fact had been a truck that was stolen. So I think this all comes down to just AMJ and his just suspicions and his conclusions. And there really are no facts to back it up. Nothing that AMJ said, for the most part, involves any criminal activity by Houghton. And I think that that it is a significant distinction and Judge Neff made it, I think it's correct, that in talking about the Pelham case, that there's a big difference between walking into someone's house and seeing a quantity of marijuana, although perhaps now with the change in the state law, that may be somewhat different, but things that are per se illegal with seeing things that are not illegal. Is that, so the point is that if the corroboration has to be corroboration of criminal activity, that you can't just corroborate innocent facts? Is that your point? I mean, are there cases that say that, that some corroboration is kind of more important than others? Well, and for example, in the Allen case, when they talked about that, that the, that where there's without, in the absence of a disha of informants reliability and 211 F3rd at page 976, where they talk about that, that there should be some corroboration of direct personal involvement in criminal activity. That again, looking at it from the point of view of the overall affidavit and so on, that it seems questionable that just piling innocent statement on innocent statement on innocent statement creates enough probable cause that someone without doing any further investigation to corroborate that can rely on it and go and, and affect a search warrant. Well, the, the door being open was corroboration. The door was, the door was open. That, that's the only part of it that was corroborated, that the door was open slightly. Well, but it was, I mean, it was someone else's house and, and that person thought there was a lock. So, I mean, that's some, I understand what you're saying about tools, but that's some indication of criminal activity, right? There's, that's some indication of criminal activity, although, again, when you look at the detail on some of these other things that AMJ gave, the statements that were reportedly made by Mr. Houghton, that he would be so detailed on some things, but particularly on this, that he wouldn't have mentioned that I took the lock off in order to get the door open so I could prop it open. But the, and again, and looking at this, that there's, and I know the courts have said that you shouldn't look at what's not there as opposed to what's there, but looking at this from the point of view of the good faith of the officer affecting the search warrant, where there's no information regarding the, any past criminal history for Mr. Houghton. There's no indication of him having the, having been involved in any of these things. There's no indication that he's been, nothing, there's no surveillance on him other than seeing him have a trailer at somebody else's house. Do you think, do you think that the reliability of an anonymous tip is the same as the reliability of somebody who's known but has no track record? I suppose someone who's known but has no track record may be an unnamed, anonymous tipster. But the courts have said, and I think, Alan, that was one of the things, that having- Well, that was what I'm saying about Alan. So Alan notes that there are cases, or one case, I don't know, there was an out-of-circuit case at least, that where all the corroboration was of innocent facts or innocent details, but it was an anonymous tipster and that wasn't enough. So is that essentially what we have in this case? You're saying it's all innocent, possibly innocent stuff, it's not an anonymous tipster, but it's somebody with no track record and therefore we should equate them? I would think that's a fairly close statement, Your Honor. And I think that it's not just, again, that this is someone who's named, but it's someone's, some questionable background, that there's nothing to show that this person in this instance should be shown or should be believed to have more credibility than someone else. But again, I think the facts under this affidavit and just going back in terms of being a bare bones affidavit, and I think that there is a line between bare bones, I suppose, and a lack of probable cause, but if there is so much of a lack of probable cause that no one reasonable person would rely on, and I think that's what we have here. Thank you. Any questions? Thank you, Your Honor. I want to first start by circling back to the Higgins case, which Mr. Nelson cited to the court during his argument, because I think Higgins and this case can't really be equated. While Higgins did involve a named informant, the fact of the matter is the problem that the court had in Higgins was that that informant had never been inside Higgins' apartment and therefore couldn't put evidence of illegal activity inside the apartment, which is the place that they were seeking to search. That's not the case here. Here we have a named informant again, but he had been inside Mr. Houghton's residence and inside the shed, both within 24 hours of actually providing the information to law enforcement, as I indicated earlier, could compare that to his knowledge from having lived with Mr. Houghton prior to having gone to jail. So I think this case is not... What do we do with this argument about that the only thing that was ever really corroborated were specific things, but also and so we have someone who has no track record and there are some cases that suggest that that's problematic if it were anonymous. Why is it not problematic here? I think it's not problematic for a number of reasons. First of all, I would point out that corroboration can be less for a named informant, as I had indicated earlier, and it can be innocent details. Both Spinelli and Gates note that because an informant is right about some things, he's more probably right about other facts. So even if he's right about innocent details, those can be used to sort of judge his credibility on other issues. What about innocent details combined with someone who's either anonymous or has no track record? I mean, I could see how innocent details... If I've worked with somebody before and they give me a series of innocent details that I corroborate based on track record, I could say, okay, fine, that's great. But if I don't know the person at all, and the only thing they give me are innocent details, what do I do with that? Well, I think the fact that you don't necessarily know AMJ in this particular case is not fatal to the warrant, and part of that comes back to the fact that he was named. And, you know, the fact that he may have had incentive to cooperate has to sort of be judged against the fact that he only gets the benefit of that cooperation if he's telling the truth. Otherwise, he's actually made his situation worse by lying to law enforcement during a traffic stop. He's actually made the situation worse rather than better. So the fact that he is named, I think there is less that has to be corroborated in this particular case, but there were corroborative efforts made in this particular case. As Judge White pointed out, the door being open was corroboration of Houghton's statement to AMJ that he had cased that particular shed and intended to come back and steal from it later. There were other details that were also corroborated. It wasn't just that they, as counsel pointed out in his argument, this isn't a situation about no surveillance. There was surveillance here, and it wasn't that they just found AMJ, or excuse me, found Mr. Houghton at any residence. They found him at JF's residence, the same residence that this is somebody Mr. Houghton works with in dealing in stolen tools. So it's the two things together, and that really comes back to the overarching theme in this particular case, is that you look at the affidavit holistically. It's a totality of the circumstances review, which is what the magistrate judge did here, and that particular review is owed great deference because the magistrate had an opportunity to review this particular affidavit. They found the very least, there's good faith here. This is not a bare bones affidavit. It has facts. It has corroboration, and the officers were objectively reasonable in relying on it. So for all of those reasons, we would ask this court to reverse the district court's finding in this particular case. Any questions? Thank you both very much. The case will be submitted.